UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RICHARD HOGAN,<br><br>           Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 1:20-cv-01787-SKO<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT KILOLO KIJAKAZI AND AGAINST PLAINTIFF DANIEL RICHARD HOGAN |

**I.     INTRODUCTION**

On December 18, 2020, Plaintiff Daniel Richard Hogan ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").  (Doc. 1.)   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

/////

/////

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

1

## II. BACKGROUND

On September 23, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, alleging he became disabled on August 25, 2009. (Administrative Record ("AR") 271-280.) Plaintiff later amended the alleged onset date to April 19, 2012. (AR 363.) He alleges he became disabled due to a combination of physical impairments including diabetes with peripheral neuropathy and chronic diabetic ulcers on his feet, and degeneration to the shoulders. (AR 363-364.) Plaintiff was born on March 10, 1967, and was 55 years old as of the alleged onset date. (AR 271, 275.) Plaintiff completed the 12th grade in 1985. (AR 299.) He worked in construction from 1999 to 2009. (AR 299.)

### A. Relevant Medical Evidence[2]

Plaintiff has a history of Type 1 and Type 2 Diabetes. (AR 586, 605.) The record contains evidence of diabetic foot ulcers and shoulder pain. (AR 535, 561, 570, 655, 658, 660-61, 666-67, 669-670, 687.) On June 5, 2012, Plaintiff received emergency care after he accidentally injected himself with too much insulin. (AR 367.) He was discharged three hours later and instructed to follow up with his primary care physician. (AR 368-71.)

#### 1. James Mohs, M.D.

Plaintiff followed up with Dr. James Mohs on June 28, 2012. (AR 608.) Dr. Mohs refilled his medications. (AR 608.) On July 3, 2014, Plaintiff presented with blood sugar of over 400 and an A1C of greater than 9%. (AR 607.) Dr. Mohs recommended a complete chemistry panel, a blood sugar log be maintained, and a change in medications. (AR 607.)

On July 3, 2014, Plaintiff followed up with Dr. Mohs for his diabetes. (AR 573.) Dr. Mohs refilled his diabetic medication including Lantus and NovoLog. (AR 574-75.)

#### 2. Harish Shah, M.D.

On July 20, 2012, Plaintiff presented to Dr. Shah for medical refills and lab results. (AR 602.) Dr. Shah observed edema on both feet, and recommended an increase in diabetic medication. (AR 603.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

On November 26, 2012, Plaintiff was again seen by Dr. Shah for medication refills. (AR 599.) Dr. Shah observed an ulcer on Plaintiff's foot that was healing. (AR 600.) Additional labs were ordered. (AR 600.)

On January 4, 2013, Plaintiff followed up with Dr. Shah concerning his lab results. (AR 597.) Dr. Shah again observed an ulcer to Plaintiff's toe that was scabbed and healing. (AR 597.) Dr. Shah refilled his Lantus and NovoLog medications and added Mevacor. (AR 597.)

On May 30, 2013, Plaintiff presented to Dr. Shah for medication refills. (AR 590.) Dr. Shah observed an ulcer to the great toe and recommended following up with an eye doctor for eye issues. (AR 592.)

On December 20, 2013, Plaintiff was seen by Dr. Shah for complaints of sore throat and right shoulder pain, and for prescription refills. (AR 580.) Dr. Shah observed thickened dry skin over the feet and right great toe. (AR 581.) Dr. Shah refilled diabetic medications, including Lasix, Amitriptyline, NovoLog, Lantus, and Lisinopril. (AR 582-83.)

On January 28, 2017, Plaintiff presented to Dr. Shah with a foot callus. (AR 741.) Dr. Shah adjusted his medications. (AR 741-42.)

On March 27, 2017, Plaintiff was seen by Dr. Shah for swollen legs with a burning sensation. (AR 723.) Dr. Shah diagnosed Plaintiff with a foot callus, ordered labwork and adjusted Plaintiff's medication. (AR 724-25.) Dr. Shah noted improvement in blood sugar levels and Plaintiff's feet on April 10, 2017, and May 1, 2017. (AR 716, 720.)

On August 22, 2017, Plaintiff was seen by Dr. Shah for x-rays to both shoulders due to shoulder pain. (AR 704, 706.) Dr. Shah refilled Plaintiff's prescriptions. (AR 706-07.)

On September 5, 2017, Dr. Shah reviewed the x-rays and diagnosed Plaintiff with cervical radiculopathy. (AR 700-02.) Plaintiff was referred to orthopedics. (AR 700-02.)

On November 2, 2017, Plaintiff presented to Dr. Shah for follow up on his shoulder pain. (AR 684.) Dr. Shah noted painful shoulder rotation beyond 140 degrees, and he re-dressed the right great toe. (AR 687.) Plaintiff was prescribed Tylenol for pain. (AR 687.)

/////
/////

### 3. Hung Ngo, M.D.

On September 10, 2013, Plaintiff presented to Dr. Ngo for lab results and prescription refills. (AR 584.) Plaintiff complained of ankle pain, osteomyelitis of the great toe with deformation, swelling and pedal edema, and an inability to stand or walk long distances without pain or his foot turning blue. (AR 585.) Dr. Ngo observed Plaintiff to be in mild pain and distress, with a 2+ pedal edema. (AR 585.) Dr. Ngo diagnosed Plaintiff with type 2 uncontrolled diabetes mellitus, and cellulitis of the right great toe. (AR 586-87.) Dr. Ngo prescribed amitriptyline and refilled insulin. (AR 587-88.)

### 4. Wendy Arzaga, M.D.

On July 29, 2014, Plaintiff presented to Dr. Arzaga with a right great toe infection. (AR 566.) Dr. Arzaga noted Plaintiff's history of diabetes and diagnosed Plaintiff with a diabetic right foot ulcer. (AR 567-71.) Plaintiff was given a shot of antibiotics, prescribed oral antibiotics, and his diabetic prescriptions were refilled. (AR 569-71.)

### 5. Pawan Kumar, M.D.

On August 25, 2014, Plaintiff followed up with Dr. Kumar concerning his diabetic condition. (AR 562.) Dr. Kumar noted Plaintiff was recently treated for a right foot infection. (AR 562.) Dr. Kumar ordered labs and updated his medications. (AR 564.)

On September 8, 2014, Plaintiff reported improved blood glucose levels. (AR 559-61.) Dr. Kumar ordered a blood glucose log. (AR 559-61.)

On October 13, 2014, Plaintiff followed up with Dr. Kumar on his diabetic condition. (AR 555.) Plaintiff denied any acute complaints, and Dr. Kumar refilled his prescriptions. (AR 555.)

On January 12, 2015, Plaintiff presented to Dr. Kumar for follow up on his diabetes. (AR 549.) Dr. Kumar advised Plaintiff to take NovoLog with his evening meal to lower morning blood sugar levels. (AR 549-51.)

On March 30, 2015, Dr. Kumar reviewed Plaintiff's medications. (AR 543-58.) Dr. Kumar increased Lantus and directed Plaintiff to increase NovoLog in light of the elevated blood glucose levels. (AR 543-58.)

On August 3, 2015, Plaintiff presented with complaints of pain "everywhere" but especially in the shoulders. (AR 537.) Dr. Kumar updated his medication list by reducing Lantus and starting Metformin. (AR 543.)

On August 24, 2015, and October 26, 2015, Plaintiff followed up with Dr. Kumar. (AR 534.) Dr. Kumar reviewed the labwork and adjusted Plaintiff's medication. (AR 534-36; 640-44.)

In December of 2015, Plaintiff followed up with Dr. Kumar. (AR 637.) Dr. Kumar ordered additional labs and adjusted Plaintiff's medications. (AR 632-35.)

On January 25, 2016, Plaintiff was seen by Dr. Kumar for follow up on his diabetic condition. (AR 629.) Plaintiff reported that he had run out of his blood pressure medication and stated his legs had been swelling. (AR 629.) Dr. Kumar observed edema and refilled prescriptions. (AR 630.)

On May 23, 2016, and June 27, 2016, Dr. Kumar noted an A1c of 9.6 and advised Plaintiff to check blood glucose levels more frequently. (AR 764, 768.)

On September 1, 2016, Dr. Kumar observed a right foot callus and a weak right-hand grip. (AR 754.) Dr. Kumar refilled prescriptions and referred Plaintiff to neurology. (AR 743-54.)

In January, February and March of 2017, Plaintiff was seen by Dr. Kumar for uncontrolled diabetes with hyperglycemia. (AR 731-38.) Dr. Kumar refilled and modified Plaintiff's diabetic prescriptions. (AR 731-38.)

On March 20, 2017, Plaintiff sought treatment for right foot redness and pain. (AR 727.) Dr. Kumar prescribed Bactrim and advised Plaintiff to seek emergency care if the foot did not improve by the next day. (AR 729.)

On July 14, 2017, and August 18, 2017, Plaintiff followed up with Dr. Kumar on his diabetic condition. (AR 710, 714.) Dr. Kumar noted an A1c level of 9.4-9.6. (AR 710, 714.) He refilled and adjusted Plaintiff's medication. (AR 710, 714.)

On September 15, 2017, Plaintiff followed up with Dr. Kumar who again adjusted Plaintiff's medications due to uncontrolled diabetes with hyperglycemia. (AR 695-99.)

5.     Tyler May, DPM

On September 28, 2016, Plaintiff was seen by Dr. May for a diabetic evaluation. (AR 656.) Plaintiff complained of numbness in the feet, swollen right hallux, and a prior bone infection. (AR

656.) Dr. May observed a callus on the medial side of the right hallux and full thickness ulceration with a fibrous and granular wound bed. (AR 657.) Dr. May found diabetic neuropathy and diabetic foot ulcer. (AR 657.) Plaintiff was advised on diabetic foot care after Dr. May performed excisional debridement of the foot ulcer. (AR 657.)

### 6. David Flora, DPM

On May 31, 2017, Plaintiff sought treatment from Dr. Flora for a left hallux callus and right hallux ulcer. (AR 830-31.) Dr. Flora debrided the ulcer and reduced the callus. (AR 831.) He noted decreased pulses and an abnormal monofilament exam. (AR 831.)

On September 27, 2017, Plaintiff treated with Dr. Flora for an ulcer on the left great toe. (AR 825.) Dr. Flora determined it was a Grade 2 penetration through the subcutaneous tissue that may expose bone, tendon, ligament or joint capsule. (AR 825.) Dr. Flora debrided the ulcer, dressed it with a padded dressing, and instructed Plaintiff to keep the skin lubricated by applying lotion daily, not to walk barefoot, and to inspect the feet daily for infections or injuries. (AR 825.)

On October 30, 2017, Plaintiff presented to Dr. Flora for follow up of the ulcer on the left great toe. (AR 820.) Dr. Flora noted improvement in the grade 2 ulcer with penetration through subcutaneous tissue that may expose bone, tendon, ligament or joint capsule. (AR 821.) He further noted a grade 3 pressure ulcer of the right foot. (AR 821.) The right foot ulcer was debrided and dressings were applied. (AR 821-22.)

### 7. Donald L. Allyn, M.D.

On October 5, 2017, Plaintiff presented to Dr. Allyn for pain in both shoulders. (AR 662.) Dr. Allyn reviewed MRIs of both shoulders taken on September 28, 2017. (AR 658-661, 665.) Dr. Allyn noted moderate arthrosis to the right shoulder AC joint and mild tendinosis without tear in the supraspinatus and infraspinatus tendons in the right shoulder. (AR 665-66.) He noted a moderately hypertrophic and osteoarthritic AC joint in the left shoulder and slight to moderate tendinosis of the supraspinatus and infraspinatus tendons in the left shoulder. (AR 666.) Dr. Allyn assessed Plaintiff with bilateral shoulder adhesive capsulitis, bilateral shoulder arthralgia, and tendinosis of supraspinatus and infraspinatus tendons of both shoulders. (AR 666-67.) Dr. Allyn determined that surgery would not be helpful. (AR 667.) As to employability, Dr. Allyn determined it unlikely that

Plaintiff would return to gainful employment that requires any overhead work using the shoulders, or heavy lifting using either arm. (AR 667.)

        8.     Chia-Wen Chang, MD

On October 19, 2017, Plaintiff followed up with Dr. Chang for bilateral cataracts. (AR 692.) Dr. Chang noted bilateral proliferative diabetic retinopathy, vitreous hemorrhage in the right eye, and age-related bilateral nuclear cataracts. (AR 693.)

    B.     Medical Opinion Evidence

        1.     K. Mohan, MD

On November 30, 2015, Dr. Mohan, a non-examining state agency physician, reviewed the available medical records and assessed Plaintiff's medical impairments of diabetes mellitus, hypertension, and peripheral neuropathy. (AR 139.) Dr. Mohan determined that Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. (AR 140.) Dr. Mohan further determined that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (AR 140.) Dr. Mohan found that Plaintiff had no restrictions on pushing and pulling movements for lift and/or carry. (AR 140.) He further found that Plaintiff could occasionally climb ramps and stairs, but could never climb ropes, ladder, or scaffolds. (AR 140.) Plaintiff had no limitations stooping, kneeling, crouching or crawling. (AR 140-41.) Plaintiff was limited in reaching overhead to the left, but had no limitations in handling, fingering, and feeling. (AR 141.) Plaintiff also had no visual or communicative limitations. (AR 141.) Plaintiff was advised to avoid concentrated exposure to machinery, heights and other hazards. (AR 141.) Dr. Mohan concluded that Plaintiff was able to perform light work. (AR 143.)

        2.     C. Scott, MD

On March 2, 2016, C. Scott, a second reviewing physician, affirmed Dr. Mohan's opinion. (AR 165-66.) Dr. Scott noted Plaintiff's medical impairments and stated there were no additional complaints or referrals for shoulder pain or vision problems. (AR 166.) Dr. Scott agreed with Dr. Mohan's opinion that Plaintiff could perform light work. (AR 167.)

/////

/////

### C. Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB and SSI on December 1, 2015. (AR 134-57.) Plaintiff's application was denied again on reconsideration on March 2, 2016. (AR 158-81.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 212.) At the hearing on December 14, 2017, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 94-116.) On April 23, 2018, the ALJ determined that Plaintiff was not disabled insofar as he could perform other jobs that existed in significant numbers in the national economy. (AR 32-42.)

### D. The ALJ's Decision

In a decision dated April 23, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 32–42.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 33–42.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 29, 2012, the amended onset date (step one). (AR 35.) At step two, the ALJ found Plaintiff's following impairments to be severe: diabetes mellitus type I and II; essential hypertension; diabetic polyneuropathy; adhesive capsulitis and arthralgia of the bilateral shoulders; and obesity. (AR 35.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 36.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. See 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. [Plaintiff] cannot reach overhead and can have occasional exposure to heavy machinery with fast moving parts and unprotected heights. He will need to alternate between sitting and standing throughout the day.

(AR 37.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 38.)

The ALJ determined that Plaintiff is unable to perform any past relevant work (step four). (AR 41.) The ALJ concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically information clerk, Dictionary of Operational Titles ("DOT") code 237.367-018, parking attendant, DOT code 915.473-010, and office helper, DOT code 239.567-010 (step five). (AR 41–42.)

Plaintiff appealed, and the Appeals Council declined to disturb the ALJ's decision which then became final. (AR 18-23.)

Plaintiff subsequently sought review of the ALJ's decision before the Appeals Council, which denied review on December 18, 2018. (AR 22.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); see also 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not

> disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC]...to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citing Swenson, 876 F.2d at 687).

B.   Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review...." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (Citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

### A.   Work-Related Limitations and Subjective Complaints

Plaintiff first claims, "The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting his subjective complaints." (Doc. 16 at 10.) Defendant urges the Court to affirm the decision because substantial evidence supported the ALJ's assessment of Plaintiff's subjective statements. (Doc. 19 at 13.)

#### 1.   The Residual Functional Capacity Determination

A claimant's residual functional capacity is "the most [a claimant] can still do despite his limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the

ALJ weighs medical and other source opinions, as well as the claimant's credibility. See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing an RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

### 2. Subjective Complaints and Plaintiff's RFC

The burden is on a claimant to show a condition is a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)); see also 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 38.) The ALJ nonetheless discounted Plaintiff's subjective complaints "concerning the intensity, persistence and limiting effects of these symptoms" as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 38.) Plaintiff complains that "[t]he ALJ failed to set forth any specific, legitimate reason for discounting Plaintiff's symptoms, or identify evidence that was inconsistent with his complaints." (Doc. 16 at 11.)

The ALJ must make specific findings about a claimant's allegations, properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). Here, the ALJ determined that Plaintiff suffered impairments including diabetes, a left leg injury, ankle swelling, and loss of circulation with shoulder pain. (AR 38.) The ALJ noted that Plaintiff reported additional symptoms of pain in his shoulder and ankles and numbness in his feet. (AR 38.) The ALJ also considered Plaintiff's testimony that he had ulcers in his right foot, and that he had to elevate his feet for three hours due to swelling. (AR 38.) The ALJ further noted that Plaintiff had high sugar levels and neuropathy with pins and needles sensations in his arms and shoulders. (AR 38.)

Plaintiff contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations. The Court does not agree. The ALJ examined new evidence from the unadjudicated period in comparison to the prior ALJ findings and found that there was material evidence of changed circumstances supporting additional limitations in Plaintiff's RFC. (AR 38-40.)

The ALJ noted that as to the evidence of diabetic foot ulcers and diminished sensation, the RFC restricts Plaintiff "to light work with occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; and occasional exposure to heavy machinery with fast moving parts and unprotected heights." (AR 38-39.) The ALJ further found that, "[a]s an additional protective measure, the residual functional capacity provides that the claimant will need to alternate between sitting and standing throughout the day." (AR 39.)

The ALJ also noted that in October 2017, Plaintiff was diagnosed with adhesive capsulitis and arthralgia of the bilateral shoulders. (AR 39.) The ALJ noted that shoulder examinations in October and November 2017 showed restrictive range of motion and symptoms of tenderness when performing range of motion movements. (AR 39.) As a result, the ALJ determined that, "To accommodate evidence of restricted range of motion in his shoulders, the residual functional capacity limits the claimant to light work with no climbing of ladders, ropes, and scaffolds and provides that the claimant cannot reach overhead." (AR 39.) The ALJ gave little weight to Dr. Mohan's and Dr. Scott's opinions concerning their finding that "the claimant could perform occasional reaching overhead with the left upper extremity," because "[t]hey did not have an opportunity to review recent objective medical tests on the claimant's shoulders evidencing rotator cuff tendinosis, mild acromioclavicular and glenohumeral osteoarthrosis, and global degenerative changes of the labrum." (AR 40.) The ALJ credited the recent evidence in support of a further restriction to "no reaching overhead." (AR 40.) Thus, the ALJ did in fact include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations.

Plaintiff also contends that the ALJ failed to offer clear and convincing reasons for rejecting his subjective complaints. Although subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ considered all of Plaintiff's subjective complaints in light of the medical evidence of his impairments. The ALJ first noted Plaintiff's medical impairments of types 1 and 2 diabetes mellitus. (AR 38.) The ALJ noted minimal diabetic complications. (AR 38.) Although Plaintiff "had a diabetic foot ulcer in

August 2014 and October 2016, . . . his right foot radiographs showed no radiographic evidence of osteomyelitis." (AR 38.) Plaintiff had a pressure ulcer in May 2017 which improved by October 2017; however, the ALJ noted that Plaintiff's "diabetic foot screenings were normal from July through October 2017," . . . that "[b]y October 2017, [Plaintiff] reported that he had good diabetes control." (AR 38.) The ALJ noted that Plaintiff has "generally preserved functioning in his extremities." (AR 38.) The ALJ then concluded that Plaintiff's diabetic foot ulcers could be accommodated by restriction to light work with occasional climbing of ramps and stairs but no climbing of ladders, ropes, and scaffolds, and occasional exposure to heavy machinery. (AR 38-39.) The ALJ further found that as an additional protective measure, the RFC provides that Plaintiff "will need to alternate between sitting and standing throughout the day." (AR 39.)

With respect to Plaintiff's diabetic neuropathy of the left upper extremity, the ALJ noted that the impairment worsened, and in October 2016, [Plaintiff] was diagnosed with polyneuropathy. (AR 39.) The ALJ noted that in January 2017, a "nerve conduction study indicated moderately severe bilateral symmetric distal sensory motor polyneuropathy." (AR 39.) Yet, "physical examinations throughout the record indicate generally preserved functioning in his extremities, and minimal evidence of swelling," which were inconsistent with his testimony. (AR 39.) As an example, the ALJ pointed to symptoms of edema in June 2012 and June 2016, at which time Plaintiff's "upper and lower extremities retained normal strength, range of motion, reflexes, coordination, and tone." (AR 39.) Further, the ALJ noted evidence that from June through December 2015, and from September 2016 through October 2017, Plaintiff had "no edema or deformity in [Plaintiff's] extremities, full range of motion in all joints, and normal reflexes, coordination, muscle strength, and tone." (AR 39.) The ALJ concluded that in light of the "evidence of limited instances of edema but generally preserved functioning," the residual functional capacity restricted Plaintiff "to light work with occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasional exposure to heavy machinery with fast moving parts and unprotected heights; and the ability to alternate between sitting and standing throughout the day." (AR 39.)

The ALJ noted that Plaintiff was assessed with adhesive capsulitis and arthralgia of the bilateral shoulders in 2017. (AR 39.) The ALJ accounted for evidence of mild rotator cuff tendinosis

14

without evidence of a tear, mild acromioclavicular and glenohumeral osteoarthrosis, and a global degenerative change of the labrum. (AR 39.)  The ALJ further noted that an MRI of the shoulder showed similar findings. (AR 39.)  The ALJ also noted that shoulder examinations in 2017 showed restrictive range of motion and tenderness. (AR 39.)  However, the ALJ +noted that examinations from June through December 2015, and September 2016 through October 2017, showed normal strength, range of motion, reflexes, coordination, and tone in his upper and lower extremities. (AR 39.) To accommodate evidence of restricted range of motion in Plaintiff's shoulders, the RFC was modified to limit Plaintiff to "light work with no climbing of ladders, ropes, and scaffolds and provides that [Plaintiff] cannot reach overhead." (AR 39.)

The ALJ noted that Plaintiff was diagnosed with hypertension in July 2014. (AR 39.)  The ALJ further noted that Plaintiff required only "minimal treatment with medication to manage this impairment and has few associated complications." (AR 39.)  In light of this impairment, the ALJ determined that "a light residual functional capacity with postural and environmental limitations will sufficiently accommodate any limiting effects due to hypertension." (AR 39.)

With respect to Plaintiff's impairment of obesity, and its exacerbating effects on his diabetes, neuropathy, and shoulder impairments, the ALJ further restricted Plaintiff's RFC to light work with postural and environmental limitations, and provided that Plaintiff could alternate between sitting and standing throughout the day. (AR 40.)

Thus, substantial evidence supported the ALJ's findings.  The ALJ offered specific reasons derived from the medical records and reviewing physicians' opinions for discounting some of Plaintiff's subjective complaints.

B.   Duty to Develop

In the alternative, Plaintiff claims that "the ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's limitations from a treating or examining source, who considered all of Plaintiff's severe medical impairments." (Doc. 16 at 12.)  Plaintiff contends that the RFC is unsupported by substantial evidence, because the record lacks a medical assessment that accounts for all of his severe impairments. (Doc. 16 as 12.)

1. Applicable Law

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Garcia v. Comm'r of Soc. Sec., No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

2. Analysis

Plaintiff contends that the ALJ was required to further develop the record with an opinion from a treating or examining source because the ALJ relied on prior administrative medical findings.  (Doc. 16 at 14-15.)  Petitioner's argument appears to be two-fold: 1) that a treating or examining opinion is required in every case; and 2) that the ALJ substituted her own interpretation of medical records and data for medical opinions.  (Doc. 16 at 13.)  Neither contention is correct.

First, although Plaintiff cites *dicta* from cases suggesting that an ALJ may not formulate an RFC without referencing a treating or examining opinion, such cases do not purport to establish a rule of general applicability that an ALJ must obtain an examining opinion in every case before rendering an RFC determination.  (Doc. 16 at 13 (citing Penny v. Sullivan, 2 F. 3d 953, 958; Tagger v. Astrue, 536 F.Supp.2d 1170, 1181 (C.D. Cal. 2008); Shipp v. Colvin, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014)).  Such a rule would tend to contravene established circuit precedent that the RFC need not mirror any particular opinion, and would directly contravene the regulations that provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  See 20 C.F.R. § 404.1519a; Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989); Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010).

While it is undoubtedly true that an ALJ may not render an RFC determination without the aid of a medical opinion, the record does contain a medical opinion, namely the opinions of the non-examining state agency consultants (Drs. Mohan and Scott) who reviewed Plaintiff's medical file at the

initial and reconsideration levels—as the agency's medical consultants do in each case. (AR 139-42; 163-66.) As noted by Defendant, Dr. Mohan reviewed evidence of Plaintiff's foot ulcers and diabetic neuropathy. (AR 137-39.) Dr. Scott also reviewed Plaintiff's medical records which contained evidence of Plaintiff's foot ulcers, leg swelling, diabetic neuropathy, and shoulder pain. (AR 159-63, 166, 477, 481, 562, 567, 572, 583-84, 591, 597, 600, 629.) Thus, Drs. Mohan and Scott were aware of Plaintiff's impairments, and determined Plaintiff could perform light work notwithstanding his impairments.

Plaintiff's argument appears to be predicated on the incorrect assumption that, as a matter of law, an ALJ is unqualified to independently interpret any medical records post-dating the agency physicians' review. Practically speaking, the very nature of the administrative review process unavoidably results in a gap in time (often a lengthy one) between the agency physicians' reviews and the ALJ's hearing decision. During that gap in time, claimants routinely continue their course of treatment for their conditions, generating new records. Accepting Plaintiff's argument would mean that the ALJ is always precluded from reviewing such records and must obtain a consultative examination in essentially every case. As explained above, there is no such legal requirement absent evidentiary ambiguity or the presence of pertinent medical records unsusceptible to lay understanding.

Plaintiff contends the ALJ erred in failing to develop the record because the RFC was unsupported by a medical assessment that accounted for all of Plaintiff's severe impairments. (Doc. 16 at 12.) Here, the ALJ gave partial weight to the agency medical consultants, because Plaintiff's condition had worsened subsequent to their opinions. It is not error to continue to rely on expert opinions when those opinions are consistent with the subsequent evidence. Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished). As noted above, Drs. Mohan and Scott were well aware of Plaintiff's severe impairments, and the subsequent evidence was consistent with their findings. The subsequent evidence included instances of diabetes, diabetic foot ulcers, diabetic polyneuropathy, and shoulder impairment. (AR 655, 666, 677.) The ALJ relied on Drs. Mohan's and Scott's opinions with respect to Plaintiff's ability to perform light work. However, the ALJ determined that the agency medical consultants' findings that Plaintiff could occasionally reach overhead were not supported in light of the subsequent medical records showing a worsening of his shoulder conditions. To account

for this worsening range of motion in Plaintiff's shoulders, the ALJ adopted a further restriction of no overhead reaching. (AR 40.) The ALJ did not make a medical finding, and instead made an administrative finding regarding Plaintiff's ability to perform basic work functions given his medical impairments, which is specifically a determination reserved to the ALJ. See 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding . . . issues ['such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity, or the application of vocational factors'] is reserved to the Commissioner"). Thus, substantial evidence supported the ALJ's determination, and there is no basis to find that the ALJ erred in failing to further develop the record with an examining opinion.

## CONCLUSION AND ORDER

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, Commissioner of Social Security, and against Plaintiff Daniel Richard Hogan.

IT IS SO ORDERED.

Dated:     **February 1, 2022**                    /s/ *Sheila K. Oberto*
                                                         UNITED STATES MAGISTRATE JUDGE